IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOORE'S MAINTENANCE & INSTALLATION, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 04 C 4891 ) ) JUDGE DAVID H. COAR ) |
| HUB GROUP DISTRIBUTION SERVICES and HUB GROUP, INC., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Moore's Maintenance & Installation, Inc. ("Moore" or "Plaintiff") is suing Hub Group Distribution Services, LLC and Hub Group, Inc. (collectively, "Hub" or "Defendants") for breach of contract, unjust enrichment, breach of the duty of good faith, and fraud in the inducement. Before this court is Defendants' motion to dismiss the Amended Complaint on the following grounds: (1) Moore's breach of contract claim is precluded by the Service Agreement, (2) Moore's unjust enrichment claim cannot coexist with its express contract, (3) Moore's breach of duty of good faith claims are foreclosed by the Service Agreement, (4) Moore's fraudulent inducement claim fails to state a claim, and (5) Hub Group, Inc. does not qualify as a defendant, and should be dismissed. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

I.   **FACTUAL BACKGROUND**[1]

Plaintiff Moore's is a Pennsylvania corporation that, among other things, installs display racks, signage, and other fixtures and materials at retail, wholesale and other locations.[2] Defendant Hub Group, Inc. is an affiliate of Defendant Hub Group Distribution Services, LLC, an Illinois corporation with a place of business in Pennsylvania. The corporation offers logistics, distribution, transportation, warehousing, inventory management, and installation services to manufacturers, distributors, and other firms. Hub provides these services with the assistance of subcontractors like Plaintiff.

In July of 1999, Plaintiff began working with Defendants through a third corporation. In October of 1999, Plaintiff began working directly with Defendants as a vendor. Between July and October 1999, "a problem arose regarding the storage of freight" Defendants inadvertently sent to Plaintiff. (Am. Compl. ¶ 16.) Plaintiff stored the freight in a facility that Defendants instructed Plaintiff to rent. Plaintiff incurred significant costs in renting the facility and then forwarding the freight to other vendors. Invoices reflecting these costs were sent to different agents of Defendants but were never paid. Defendants later approached Barbara Moore ("Moore"), vice president and secretary of Moore's, with a proposed settlement for a reduced amount. Plaintiff rejected the settlement, but continued to do work for Defendants during this time.

Defendants then requested Plaintiff to provide services for test stores. When Defendants informed Plaintiff what Plaintiff would be paid for servicing the stores, Moore verbally informed Defendants' agents that Plaintiff would not be able to accept the pricing and that Plaintiff would

---

[1] For the purposes of this motion, the following facts alleged in Plaintiffs' Amended Complaint are taken as true.
[2] This paragraph includes facts stated in the Service Agreement between Plaintiff and Defendants, attached to Defendants' Motion to Dismiss as Exhibit A.

lose money on the project. After disputing the pricing, Plaintiff continued to do work for Defendants, completing work on eleven stores.

Moore later met with John Shipley ("Shipley"), a Hub executive. Moore informed Shipley that Plaintiff would not be able to continue work if Defendants did not supply the appropriate pricing. Shipley then asked what it would take for Plaintiff to continue work; Moore responded, "3,500." Shipley then stated that Plaintiff would receive $3,500 for each store.

The next day, Shipley called Plaintiff to renegotiate the additional $3,500 pricing. Plaintiff declined to renegotiate. About one week later, Plaintiff received a termination letter from Defendants. Defendants have not paid any money to Plaintiff for the finished jobs.

Count I of Plaintiff's Amended Complaint alleges breach of contract for Defendants' failure to pay, as agreed, for labor and expertise supplied by Plaintiff. Count II alleges breach of contract for the oral agreement entered into between Shipley and Moore in April 2002. Count III alleges unjust enrichment because Defendants have received good and services for which they failed to pay. Count IV alleges that Defendants breached the duty of good faith under 13 Pa.C.S.A. § 1203. Count V alleges that Defendants breached the duty of good faith under common law  Finally, Count VI alleges fraud in the inducement: Defendants made a knowingly false, fraudulent, and unsupported representation that they would provide Plaintiff with "significant work, on a national basis" in exchange for Plaintiff's paying for the storage of Defendants' freight. (Am. Compl. ¶ 52). Plaintiff alleges that Defendants made this representation "solely to enable Defendant to obtain storage services and other service for labor" without intending to pay those for services. (Am. Compl. ¶ 55). Plaintiff alleges damages in excess of $2,000,000.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 917 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, *Fed R. Civ. P.* 12(b)(6), and views the allegations in the light most favorable to the plaintiff. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 458, 461 (7th Cir. 1993).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to state with particularity any circumstances constituting fraud. Thus, while a plaintiff may plead states of mind generally, he or she must plead the circumstances—the "who, what, when, where, how"—of the alleged fraud in detail. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## III. ANALYSIS

### A. Counts I & II

Defendants have moved for dismissal of Counts I (breach of written contract for services rendered) and II (breach of contract on oral agreement) on the ground that breach of contract claims are precluded by the Service Agreement. At issue is whether the oral communication between Moore and Shipley in April 2002 is barred by the Service Agreement.

Generally, oral modifications of a written contract are enforceable, even when the contract prohibits oral modifications. *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 312, 660 N.E. 2d 162 (see also, *Bell & Howell Financial Services Company v. St. Louis Pre-Sort, Inc.*, 1999 U.S. Dist. LEXIS 512). This includes subsequent modifications to compensation. However, "where the writing contains an express provision that it constitute[s] the entire contract between the

parties and should not be modified except in writing, the party seeking to show subsequent oral modification in the agreement must prove it by clear, precise, and convincing evidence." *Nicolella v. Palmer*, 432 Pa. 502, 509. 248 A.2d 20, 23 (Pa. 1968). Oral modifications to the Service Agreement are, thus, permissible. If the Service Agreement is read to preclude modifications except in writing, then the *Nicolella* standard should be applied.

Provision 11(a) of the Service Agreement is a merger clause, providing that the four corners of the Service Agreement supercede all "*prior* discussions, understandings, representations and agreements, whether oral or in writing, by or between the parties" (emphasis added). Defendants claim that the integration clause bars claims predicated on prior or subsequent oral agreements, citing *Air Safety, Inc. V. Teachers Realty Corp.*, 185 Ill. 2d 457, 465, 706 N.E. 2d 882, 886 (1999) and *Bethlehem Steel Corp. V. Tishman-Adams, Inc.*, 45 Ill. App. 3d 1003, 1009, 360 N.E. 2d 475, 479-80 (1st Dist. 1977). However, the cited cases are inaposite. These cases concern oral communications *prior* and *concurrent* to contract negotiation and formation. They do not support the contention that *subsequent* oral modifications are barred by the merger clause as stated.

Defendants cite *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, barring subsequent oral agreements when the contract specifies that its terms "cannot be altered or amended except by agreement in writing signed by the duly authorized representatives of the parties hereto." *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 730 (7th Cir. 1999). No language to this effect is found in the Service Agreement. Provision 11(d) permits written modifications without consideration; it does not expressly bar all subsequent oral modifications. Because the contract does not bar subsequent oral modifications, the *Nicolella* standard is not directly applicable. Further, *International Mtg.* applies to sale of goods, relying

on UCC Article 2 to preclude modifications to integrated contracts. The present case concerns a service contract, not sale of goods of contract, such that Article 2 is not accurately applied.

Defendants analogize the unpublished opinion of *Bells Fuels, Inc.* to the present case. In *Bells Fuels, Inc.*, the plaintiff, a "nonexclusive distributor" of lubricants, distributed Chevron products pursuant to a written "Jobber Agreement", specifically allowing for quantities of lubricants to be sold in excess of the maximum quantity specified in the agreement. *Bells Fuels, Inc. V. Chevron U.S.A. Inc.,* No. 99 C 2586, 2000 U.S. Dist. LEXIS 22341 (N.D. Ill. March 21, 2000). Further, a provision in the Jobber Agreement states that "no modification of this agreement...shall be binding on [Chevron] unless it is in writing and signed by [Chevron]." *Bells Fuels, Inc. V. Chevron U.S.A. Inc.*, No. 99 C 2586, 2000 U.S. Dist. LEXIS 22341 (N.D. Ill. March 21, 2000). These oral modifications to the excess lubricants were found to be barred by the Jobber Agreement. Defendants argue that, similarly, the Service Agreement bars the plaintiff from oral modifications for the additional 55 installation jobs. This analogy is problematic for several reasons. First, the Jobber Agreement governs a sale of goods contract, whereas the Service Agreement is a service agreement. Second, the Jobber agreement expressly states that Chevron may elect to sell quantities "in excess of the maximum quantities specified." The excess amount is specifically covered in the contract. The Service Agreement does not contain an express provision for additional installations. Oral modifications to increase quantity of installments are not limited by the contract language in the Service Agreement. Third, the Jobber Agreement specifically prohibits binding modifications ("no modification of this agreement, and no waiver of any provision hereof shall be binding...unless in writing"), whereas the Service Agreement does not prohibit modifications, but expressly permits modifications

without consideration, if in writing ("Any and all ...modifications...shall be binding upon the parties hereto despite the lack of legal consideration so long as the same shall be in writing").

Even if it was unclear whether subsequent oral modifications are precluded in the Service Agreement, the controlling law allows oral modifications to a written contract even when the contract prohibits such modifications. *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 312, 660 N.E. 2d 162. Thus, oral modifications to the Service Agreement are permissible.

Further, the Defendants claim that there is no independent consideration to support an oral modification. When the allegations are viewed in the light most favorable to the plaintiff, the negotiated compensation of $3,500 applies to both the eleven jobs already completed and the fifty-five *future* jobs. A promise to pay in exchange for future service is sufficient consideration for a contract. Here the contract can be read to be a promise by the Plaintiff to complete the remaining jobs for an additional $3,500 per job.

Finally, the Defendant claims that the alleged oral agreement is unenforceable because it violates the Illinois Statute of Frauds. Under Illinois law, a service contract is barred by the Statue of frauds only "if it is impossible to perform the contract within one year. If, however, it appears from a reasonable interpretation of the terms of the agreement that it is capable of performance within one year, the Statute of Frauds is inapplicable." *Hartburger v. SCA Services, Inc.,* 200 Ill. App. 3d 1000, 1016, 558 N.E.2d 596, 606 (1990) (internal citations omitted). The amount of resources and actual schedule determined is not relevant. The question is whether a reasonable interpretation of the agreement renders the plaintiff capable of performing the 55 installation jobs within one year. Plaintiff alleges that it has historically completed installation jobs within one or two days. It is certainly reasonable that the plaintiff

would be able to complete 55 installation jobs within one year at this rate. Therefore, there is not violation of Illinois Statute of Frauds.

For the foregoing reasons, Defendant's motion to dismiss Counts I and II of the Plaintiff's Amended Complaint for failure to state a claim is DENIED.

### B. Count III

Defendants have moved for dismissal on the ground that Plaintiff's unjust enrichment claim cannot coexist with its breach of contract claims, and should be dismissed. The court agrees. When a subject matter is covered by a contract, the two parties governed by the contract may not bring a claim of unjust enrichment on that subject matter. *Util. Audit, Inc. V. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). This issue is clearly decided:

> The theory of unjust enrichment is based on a contract implied in law. To recover under this theory, the plaintiff must show that the defendant voluntarily accepted a benefit that would be inequitable for him to retain without payment. Because unjust enrichment is based on an implied contract, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Hartingan v. E&E Hauling*, 153 Ill. 2d 473, 496-97, 607 N.E.2d 165, 177 (1992)

Because the plaintiff's unjust enrichment claim for the 11 completed installations is a subject matter covered by the Service Agreement, a separate unjust enrichment claim is not permissible. The Plaintiff misconstrues *Aprile Seafreight S.P.A. v. Global Freight, Inc.*, 2005 U.S. Dist. LEXIS 32797 (D. Ill. 2005). "To plead the alternative claims of breach of contract and unjust enrichment [Federal Rules of Civil Procedure 8(3)(2)]...Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties relationship." *Aprile Seafreight S.P.A.*, Id. The Court in fact rejected the unjust enrichment claim in *Aprile Seafreight S.P.A.* because it was on the same subject matter as the breach of contract claim.

-8-

For the foregoing reasons, Defendant's motion to dismiss Count III of the Plaintiff's Amended Complaint is GRANTED.

### C. Counts IV & V

Defendants have moved for dismissal of Counts IV and V on ground that Plaintiff's Breach of Duty of Good Faith claims are foreclosed by the Service Agreement. Federal courts that exercise diversity jurisdiction apply the forum state's conflicts laws. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); *D'Acquisto v. Washington*, 640 F. Supp. 594, 619 (N.D. Ill. 1986). Illinois courts recognize the choice of law agreement between parties, and will only engage in traditional conflict-of-laws analysis when parties fail to stipulate choice-of-law between themselves. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (Ill. 1975); *H.B. Fuller Co. v. Kinetic Systems, Inc.*, 932 F.2d 681, 685 (7th Cir. 1991); *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 605 F. Supp. 793, 796 (N.D. Ill. 1985).

The Service Agreement contains a choice-of-law provision under Section 11(b), stipulating the use of Illinois law for disputes arising out of or related to the Service Agreement. Because the choice-of-law provision controls, Illinois law governs this breach of contract action arising out of the Service Agreement.

Count IV of Plaintiff's Amended Complaint seeks relief for violation of Pennsylvania law. Pennsylvania law is an improper choice of law, given the choice-of-law provision in the Service Agreement, invalidating Count IV.

Count V of Plaintiff's Amended Complaint seeks relief for breach of duty of good faith at common law. Under Illinois law, independent claims of breaches of implied duties of good

faith are not recognized, separate from a breach of contract claim. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099 (7th Cir. 1997); *Industrial Specialty Chems. v. Cummins Engine Co.*, 902 F. Supp. 805 (D. Ill. 1995). In the instant case, the breach of duty of good faith claim is brought in conjunction with a breach of contract claim, and is recognized under Illinois law.

Therefore, Defendant's motion to dismiss Count IV is GRANTED, and motion to dismiss Count V is DENIED.

### D. Count VI

Defendants have moved for dismissal on the grounds that the Plaintiff failed to state a claim for fraud in the inducement. Federal Rules of Civil Procedure 9(b) requires a plaintiff to state with particularity any circumstances constituting fraud, including the "who, what, when, where, how" of the alleged fraud in detail. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The Plaintiff's Amended Complaint states the who, what, where, when, how of the alleged fraudulent statement. The statement was made by Shipley to Moore (who), regarding the pricing and quantity of installations in an attempt to resolve a dispute about money owed to Plaintiff by Defendant HGDS (what), taking place in Bensalem Pennsylvania (where), in April 2002 (when), via an in-person meeting (how). Paragraph 31-32, 52-53 of Amended Complaint. These facts stated by the Plaintiff satisfies the particularity of facts requirement of Rule 9(b).

Defendants further claim that Plaintiff's specific statements or misrepresentations of alleged fraud are not identified. In particular, Plaintiff's allegations of fraud are based on Defendant's promise of future action (payment), where failure to perform is a breach of promise rather than fraud. *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308 (Ill. App. Ct. 2000).

Generally, "a promise of future conduct cannot constitute a material misrepresentation in support of an allegation of fraud." *First Nat'l Bank v. St. Charles Nat'l Bank,* 152 Ill. App. 3d 923, 934 (Ill. App. Ct. 1987). However, if "the promise is made with no intention of performing the acts and is part of a preexisting fraudulent scheme," then it is sufficient for a complaint allegation. *First Nat'l Bank v. St. Charles Nat'l Bank,* 152 Ill. App. 3d 923, 934 (Ill. App. Ct. 1987). The Plaintiff alleges that Defendant had knowledge that the pricing representations were false, and made the represenations "without any intention to pay for such services." (Am. Compl. ¶ 55-55). Further, Plaintiff alleges that there have been past non-payment by Defendant for storage services, suggesting a "preexisting fraudulent scheme." This satisfies the pleading requirements under Rule 9(b).

For the above reasons, Defendant's motion to dismiss Count VI for Fraud in the Inducement is DENIED

### E. Motion to Dismiss Hub Group, Inc. As Defendant

Defendants have moved for dismissal of Hub Group, Inc. as a defendant on grounds that Plaintiff failed to allege operative facts against the specific defendant. Generally, corporations are "separate and distinct entities" from "other corporations with which it may be affiliated." *Main Bank of Chicago v. Baker,* 86 Ill. 2d 188, 204 (Ill. 1981). Further, "before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Main Bank of Chicago v. Baker,* 86 Ill. 2d 188, 204 (Ill. 1981).

The Plaintiff has not provided sufficient facts to show that Hub Group, Inc. controlled its affiliate Hub Group Distribution Services (HGDS) in relation to this case. There are no facts indicating that HGDS was treated as an alter ego of Hub Group, Inc., or that separating the two corporate identities would sanction fraud or injustice. HGDS is simply stated as an affiliate of Hubs Group, Inc., and based solely on this affiliation, Plaintiffs charge Hub Group, Inc. as a defendant as well. Merely using "Defendants" in the plural form is not a sufficient basis for charging Hub Group, Inc. as a defendant. Further, interactions and communications between the Plaintiff and Defendant in the Complaint are solely with HGDS, not Hub Group, Inc. The mere fact that HGDS is an affiliate of Hub Group, Inc. is not sufficient to hold Hub Group, Inc. liable for the actions of HGDS. *Main Bank of Chicago v. Baker,* 86 Ill. 2d 188, 204 (Ill. 1981).

Therefore, there is insufficient operative facts against Hub Group, Inc., and Defendant's motion to dismiss the defendant Hub Group, Inc. Is GRANTED.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED in part and GRANTED in part. Dismissal as to Counts I, II, V and VI of the Plaintiff's Amended Complaint are DENIED; dismissal as to Counts III, and IV are GRANTED; and dismissal of Hub Group, Inc. as a party defendant is GRANTED

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **September 6, 2006**